### In re MIDLAND TRANSPORTATION CO., Debtor.

### Wil L. Forker, Trustee, Plaintiff,

### v.

### Prins Insurance Co. Inc., Defendant.

**Bankruptcy No. 01–02613S.**
**Adversary No. 02–9067S.**

United States Bankruptcy Court,
N.D. Iowa,
Western Division.

April 1, 2003.

---

A. Frank Baron, Sioux City, IA, for Debtor.

Donald H. Molstad, Wil L. Forker, Sioux City, IA, for Trustee/Plaintiff.

Michael J. Jacobsma, Orange City, IA, Stanley E. Munger, Sioux City, IA, for Cred. Comm. Chair./Defendant.

## DECISION

WILLIAM L. EDMONDS, Bankruptcy Judge.

Trustee Wil L. Forker asks that Prins Insurance, Inc. (hereinafter "Prins") be compelled to turn over more than 100 motor vehicle titles which the trustee alleges are property of the estate. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E). Hearing on the matter was held March 12, 2003 in Sioux City. Donald H. Molstad appeared for the trustee. Michael J. Jacobsma appeared as attorney for Prins.

### Findings of Fact

Midland Transportation Company (hereinafter "Midland") filed its chapter 11 petition on July 26, 2001. Its case was converted to chapter 7 on November 28, 2001, and Forker was appointed trustee. Midland was a "less than truck load" motor carrier which operated throughout the United States. It had terminals in 14 states. It was established in 1977 by Gerald and Claire Mattox. After a time, their four sons became shareholders and all worked for the company. Midland's operation was financed by F & M Bank located in Marshalltown, Iowa.

Midland had a business relationship with Sioux Falls Cartage, Inc., a trucking company located in Sioux Falls, South Dakota. Sioux Falls Cartage was owned and operated by Roger Waldner. Midland would transfer some of its shipments to Sioux Falls Cartage for the completion of delivery in that area, and Sioux Falls Cartage would use Midland to complete some of its shipments.

In December 1997, Sioux Falls Cartage sold its assets to Sioux Falls Freight Systems, Inc., a company incorporated by Waldner, Gerald Mattox, and Mattox's four sons. The purchase was financed by F & M Bank of Marshalltown. The loan was guaranteed by Midland. Midland and Sioux Falls Freight Systems, Inc. (hereinafter "Freight Systems") used each other's shipping services. At all times relevant to the issues before the court, they owed each other money.

Freight Systems did not do well financially. Mattox and his sons resigned as directors of Freight Systems in late 2000. They signed over their shares of Freight Systems to F & M Bank. Roger Waldner continued to operate the business. In November 2000, Waldner made the decision to dissolve Freight Systems pursuant to South Dakota law. Creditors were given notice to file claims against it. It was not anticipated that there would be sufficient corporate assets to pay all allowed claims.

Roger Waldner contacted Gerald Mattox early in 2001. He asked Mattox to meet him to discuss the financial relationship between Midland and Freight Systems, Midland's debt to Freight Systems, and to discuss the titles to motor vehicles which Midland owned and which were not encumbered by liens. Waldner and Mattox met at a restaurant in Stuart, Iowa in the spring of 2001. Mattox does not remember the month or day, but he believes it was prior to April. Mattox took the titles with him. At the time, Mattox was negotiating with Waldner to sell him Midland. Mattox was negotiating also with a company called USF Dugan.

Waldner was concerned about Midland's debt to Freight Systems. Mattox believed

that Waldner wanted the titles as security. Waldner was to hold the titles for the debt. Midland would be able to use the motor vehicles indefinitely. Mattox wanted to continue operating pending the sale of Midland. He did not have a problem turning over the signed titles to Waldner because Midland owed Freight Systems a "lot of money," perhaps half a million dollars, and because he was negotiating for the sale of Midland to Waldner.

Mattox signed the transfer section of the titles on behalf of Midland. He did not date his signature nor did he fill out the name of the transferee. He gave the titles to Waldner. Mattox and Waldner did not discuss the execution of a security agreement, and there was no discussion about the "perfection" of an interest in the vehicles by Freight Systems. Mattox testified that he signed the titles and gave them to Waldner to take care of the debt. He is not aware, however, that he actually received any credit on Midland's debt to Freight Systems. Mattox did not notify his bank that he had signed the titles and delivered them to Waldner. He did not notify Prins, his motor vehicle insurance agent, of the transaction.

Mattoxes and Waldner later reached an agreement on the sale of Midland's stock to Waldner. Waldner, or an entity owned by him, would pay Mattoxes $600,000.00 for the stock. An agreement was signed. Waldner took over in June 2001, and an agent of his began operating Midland. The checks to Mattoxes were not honored. Midland filed its chapter 11 bankruptcy petition on July 26, 2001. The case was converted to chapter 7 on November 28, 2001.

On April 25, 2002, Gerald Mattox signed an affidavit stating that on or about January 15, 2001, he had transferred title and delivered possession of certificates of title to various vehicles owned by Midland to Waldner. The affidavit stated that "[t]he purpose of said transfer was to provide full satisfaction for all indebtedness owed to Roger Waldner and/or Sioux Falls Freight Systems by Midland Transportation Company" (Exhibit I). It stated also that a condition of the transfer was that Midland could continue using the vehicles pending a sale of Midland (*Id.*).

Prins Insurance, Inc. is an independent insurance agency located in Sanborn, Iowa. Paul Anema is the majority stockholder and president. Prins began providing insurance products and services to Midland in the 1990s. Policies included liability and casualty insurance for Midland's tractors and trailers. Midland paid premiums to Prins which then paid the carriers. Midland paid Prins monthly. In late 2000, Midland fell behind in its payments. By January 2001, when it came time for policy renewal, Midland still owed Prins for part of the year 2000 premiums. Midland paid some money down and financed the back balance with a promissory note to Prins. The debt was more than $500,000.00. Midland was to pay off the debt by the end of 2001. Midland filed bankruptcy in July, owing Prins between $500,000.00 and $600,000.00. Anema was appointed to the unsecured creditors committee. He was elected chairman. Anema served on the committee until the case was converted to chapter 7 in November 2001.

In April 2002, Anema was contacted by Steve Bear. Bear told Anema that he had possession of vehicle titles that had been Midland's and that he wanted to discuss them with Anema. The two men met in Sanborn. Bear said he was authorized to dispose of or to sell the titles. He did not identify himself as an agent of Waldner or Freight Systems. Anema was interested, but he wanted first to investigate. He talked to Mattox, who he said told him he signed the titles to take care of some debt

to Freight Systems and to Waldner. Anema talked to Waldner, who said he wanted nothing to do with the titles. There was no evidence presented as to why Freight System's interest in the vehicles was not dealt with in Freight System's liquidation and dissolution in South Dakota. Anema was assured by his attorney, Mr. Jacobsma, that the trucks were not part of Midland's bankruptcy.

Anema and Bear met again during April. On behalf of Prins, Anema paid Bear $10,000.00 for the titles. He did not think that Bear was the owner. Anema believed the $10,000.00 payment was a fee for arranging the sale. Anema testified that he believed Prins was buying equipment that belonged to Freight Systems, and that Prins had a claim to the trucks because Freight Systems owed Prins about $400,000.00. Anema did not get a bill of sale. He did not know the location of the trucks. He believed that Prins was incurring an expense in the hope of recouping some of its claim against Freight Systems. Bear agreed to help find the vehicles. Any trucks which could be located would be sold, and after recouping recovery expenses and the $10,000.00 payment to Bear, Anema would consider, in his discretion, paying something more to Bear for Bear's help. After that, any balance would be used to reduce Freight Systems's debt to Prins. Despite Anema's intent to proceed in that fashion, he considered that Prins was buying the vehicles. Anema believed the trucks were worth perhaps $150,000.00, not including consideration of the costs of recovering them. Prins never had the titles transferred to its name. They remain in the name of Midland, but with the transfer section executed by Mattox.

Anema first learned there would be problems regarding the trucks when he learned that some trucks were being sold at an auction arranged for by Wil Forker, Midland's chapter 7 trustee. Anema claimed the trucks. He and Forker discussed their respective claims, and this adversary proceeding ensued.

## Discussion and Conclusions

Forker asks for an order compelling Prins to turn over all motor vehicle titles in his possession which name Midland as owner. Forker contends that the parties contemplated Midland's granting Freight Systems a security agreement, and since that interest was never perfected, it is void. Further, he argues that because Prins purchased that interest from Freight Systems, it obtained no interest in the vehicles. Forker says the vehicles remain unencumbered property of the estate and Prins should be forced to turn over the titles. The trustee argues also that even if Prins' interest is not void under Iowa law, the trustee's rights under 11 U.S.C. § 544(a)(1) are superior to Prins' unperfected interest.

Prins disputes the trustee's claim to the vehicles. It argues that Mattox and Waldner contemplated an absolute transfer of the vehicles from Midland to Freight Systems. It says that the transfer was accomplished by the execution of the titles in the spring of 2001. Prins contends that even if it were so that the transfer was not "perfected" by placing the titles in Prins' name, Prins' ownership should still be established under a theory of constructive trust.

Resolution of this dispute hinges on the intent of the participants to the transaction—Mattox for Midland and Waldner for Freight Systems. Article 9 of the Uniform Commercial Code applies to "any transaction (regardless of its form) which is intended to create a security interest in personal property...." Iowa Code § 554.9102(1)(a) (2001).

■ I find by a preponderance of the evidence that Mattox and Waldner intended that Midland grant security interests in the tractors and trailers to Freight Systems. Mattox believed that Waldner wanted security for the money Midland owed Freight Systems. Mattox believed that Waldner or Freight Systems would hold the titles indefinitely, and that Midland would keep using the vehicles. Mattox testified that he believed Waldner was holding the titles for debt. Midland would be entitled to the titles back when the debt was paid. Mattox did not know whether Waldner would put the titles in Freight System's name. Mattox testified that the two men did not discuss what Waldner was going to do with them or how he was going to perfect.

The method chosen by the two men was not illogical. Midland, by Mattox, signed the titles as transferor. The name of the transferee was left blank, and the execution of the transfer section was not dated. It is not inconceivable that the two believed that if the debt was not paid, Waldner could complete the transfer section and have the titles put in the name of Freight Systems. If Freight Systems was paid by Midland, Midland could regain possession of the titles which were already in its name. That this is not the appropriate way to obtain and perfect a security interest in a motor vehicle does not mean that Waldner and Mattox did not intend that the transaction create a security interest.

Mattox's affidavit is not inconsistent with his testimony. In the affidavit, Mattox states that the purpose of giving Waldner the signed titles was to "provide full satisfaction for all indebtedness owed to Roger Waldner and/or Sioux Falls Freight Systems by Midland Transportation Company." Exhibit I.

*Providing* for full satisfaction of a debt is not necessarily the same as fully satisfying the debt immediately. The statement is ambiguous and certainly can mean that Mattox, by granting security interests in the trucks, was taking measures to ensure future satisfaction. I do not find that Mattox's testimony was impeached by the affidavit.

■ The security interests which Midland intended to grant to Freight Systems did not attach to the trucks. Freight Systems did not have possession of the trucks, and there was no written security agreement. Iowa Code § 554.9203(1)(a) (2001).

■ Freight Systems did not perfect its security interests. Perfection of a security interest in a motor vehicle in Iowa is accomplished by delivering to the appropriate county treasurer an application for certificate of title which lists the interest, by delivery of or an application for notation of security signed by the owner. Iowa Code § 321.50(1) (2001). "If the owner or secured party is in possession of the certificate of title, it must also be delivered at this time in order to perfect the security interest." *Id.*

Although Article 9 of the Uniform Commercial Code, as adopted in Iowa, applies to the creation of security interests in motor vehicles (Iowa Code § 321.50(5)), § 321.50 of the Iowa Code governs perfection. Iowa Code § 554.9302(3)(b) (2001).

Section 321.50 states that "[a]ny person obtaining possession of a certificate of title for a vehicle not already subject to a perfected security interest ... who purports to have a security interest in such vehicle shall, within thirty days from the receipt of the certificate of title, deliver such certificate of title to the county treasurer of the county where it was issued to note such security interest and, if such person fails to do so, the person's purported security

interest in the vehicle shall be void and unenforceable and such person shall forthwith deliver the certificate of title to the county treasurer of the county where it was issued." Iowa Code § 321.50(6) (2001).

█ Because Freight Systems failed to perfect its interests as prescribed by Iowa law, the interests became void. Mattox withdrew as an officer of Midland by the end of May 2001. He executed the titles sometime after January 1, 2001 and before the end of May. I conclude that by no later than June 30, 2001, any security interests claimed by Freight Systems in the affected trucks became void. This was prior to the filing of Midland's chapter 11 bankruptcy petition. At the time of the filing, the trucks were the property of Midland unencumbered by any liens. On the date of Midland's bankruptcy, Freight Systems was obligated to surrender the titles.

Prins purchased possession of the titles in April 2002. Although Mr. Anema may have believed he was purchasing the trucks from Freight Systems, he purchased only the interest which the seller then had, which was no interest at all.

█ Prins argues that the court should determine that the trucks are owned by Prins under a constructive trust theory. Prins argues that a constructive trust is an appropriate remedy because Freight Systems was prevented from filing the titles by the refusal of Steve Bear to turn the titles over to Freight Systems. The purpose of the imposing a constructive trust is to prevent fraud or unjust enrichment. *Regal Ins. Co. v. Summit Guaranty Corp.*, 324 N.W.2d 697, 704–05 (Iowa 1982). It is a "remedial device by which the holder of legal title is held to be the trustee for the benefit of another who in good conscience is entitled to the beneficial interest." *Id.* One must show entitlement to the remedy by clear and convincing evidence. *Id.* at 705.

█ There has been no such evidence. There is no evidence of fraud or unjust enrichment. There was no explanation of how Bear came to have the titles or that he prevented Freight Systems from obtaining titles to the trucks in its name. Anema testified that he called Waldner about the titles. Waldner said he did not want anything to do with them. Anema testified that Bear told him he had the right to dispose of the trucks. Moreover, absent the imposition of a constructive trust, Midland would not be unjustly enriched. It would retain title to the trucks free of any liens because that is what the Iowa statute provides. There has been no evidence of any fraudulent or inequitable conduct on the part of Midland.

I conclude that at the time Prins purchased possession of the titles, Midland was the legal owner of the trucks free of any liens. Forker, as Midland's bankruptcy trustee, has a superior right to possession over Prins, and Prins should be ordered to surrender the titles to Forker.

IT IS ORDERED that Prins Insurance, Inc. shall forthwith surrender to Wil L. Forker, trustee, all motor vehicle titles in its possession or control which identify the owner of the vehicles as Midland Transportation Company. The titles to be surrendered shall include, but not be limited to, those titles purchased by Prins Insurance, Inc. from Sioux Falls Freight Systems, Inc. and/or Steve Bear.